FILED
ASHEVILLE, N.C.

DEC - 3 2008

U.S. DISTRICT COURT
W. DIST. OF N.C.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>vs. )<br><br>JENNIFER SIGMON )<br>AARON MORRIS, )<br>    Defendants. ) | DOCKET NO. 5:08CR58<br><br>**BILL OF INDICTMENT**<br><br>Violations:<br><br>18 U.S.C. § 2<br>18 U.S.C. § 1344<br>18 U.S.C. § 1349 |

## THE GRAND JURY CHARGES

### INTRODUCTORY PARAGRAPHS

1. Beginning by on or about January 2005 and continuing through at least on or about October 31, 2005, Jennifer SIGMON and Aaron MORRIS and others both known and unknown to the grand jury engaged in a scheme and artifice to defraud a financial institution, TELCO Community Credit Union (TCCU), in Catawba and Iredell Counties in the Western District of North Carolina and elsewhere.

2. At all times material to this indictment, SIGMON was employed by TCCU at the Hickory, North Carolina TCCU location. TCCU is a credit union with accounts insured by the National Credit Union Share Insurance Fund which did business in four locations in the Western District of North Carolina. At all times material to this indictment, MORRIS was employed by a used car dealership, CARPROS, in Mooresville, North Carolina as the loan coordinator.

3. CARPROS entered into an agreement with TCCU whereby CARPROS would direct customers to TCCU for auto loans. MORRIS was the primary point of contact at CARPROS for the purpose of completing these loan transactions. SIGMON, as branch manager during this scheme, had authority to approve loan requests received from CARPROS.

4. In order to qualify individuals for loans, TCCU implemented a loan approval process called Risk Based Lending. Risk Based Lending consisted of a formula used to qualify individuals for loans. The factors considered in the formula included individual income, National Automobile Dealers Association (NADA) value of the auto being purchased, the length of time the applicant had lived in his/her residence, and other similar indicators of an individuals' financial standing.

5. Risk Based Lending calculations generated a letter score from "A - E", with "A" being the highest and "E" the lowest. Applications that scored "D" or "E" could not be approved by SIGMON as branch manager alone. All loan applications that scored "D" or "E" required TCCU Credit Committee approval before the loan could be approved. Risked Based Lending Scores of "A", "B" or "C" could be approved by the branch manager. SIGMON and MORRIS manipulated many of the Risked Based

Page 1 of 4

Lending scores to score "C" or higher and thereby avoided Credit Committee oversight as to those loans. When Credit Committee review did take place it was often based on fraudulent information, such as overstatement of income and/or NADA valuations and/or false length of residence information.

6. To perpetuate the scheme both SIGMON and MORRIS falsely manipulated loan application numbers so that the borrower/purchaser received a favorable score which they would not have achieved had valid numbers been used. Both SIGMON and MORRIS were aware that the numbers entered into loan applications were not in fact correct, and they assisted one another in completing loan documentation in order for TCCU to fund loans.

7. The fraudulently obtained loans enabled CARPROS to sell a large volume of cars. MORRIS benefitted by virtue of the commissions on sales he received. SIGMON benefitted by receiving a portion of the proceeds from MORRIS. During the period of the conspiracy TCCU funded over five million dollars of car loans to CARPROS purchasers, the majority of these loan documents contained fraudulent information .

## OVERT ACTS

8. In furtherance of this conspiracy and to effect the objects thereof, there was committed by at least one of the co-conspirators herein, in the Western District of North Carolina and elsewhere, at least one of the following overt acts, among others:

a. On or about March 17, 2005, in loan number, 3008970-143 the NADA value of the automobile purchased was fraudulently elevated and the borrowers housing expense was omitted from the debt-to-income calculation in order to fraudulently qualify the borrower for the loan.

b. On or about April 8, 2005, in loan number 3009590-143, the credit score of the borrower was manipulated to total 667 when in fact the credit score total should have been 644, thereby fraudulently increasing the Risk Based Lending score, and did thereby obtain a loan for the purchase of an automobile.

c. On or about April 8, 2005, in loan number 3009590-143 the NADA value was entered as $18,450 when in fact the loan value on this vehicle should have been reflected as $14,875. Also on this same date in this same loan a fraudulent pay stub was generated in order to substantiate income.

d. On or about June 9, 2005, in loan number, 3011290-143 the borrower scored "B" on the Risk Based Lending scale when in truth the borrower should have received a score of "D." This fraud enabled the defendants to circumvent the required Credit Committee approval and enabled the loan to be funded.

e. On or about June 10, 2005, in loan number 3009910-144 the borrower scored "C" on the Risk Based Lending scale when in truth the borrower should have received a score of "E." This fraud enabled the defendants to circumvent the required Credit Committee approval and enabled the loan to be funded.

Case 5:08-cr-00058-KDB-SCR    Document 1    Filed 12/03/08    Page 2 of 4

f.      On or about July 29, 2005 in loan number 3013140-143 the borrower scored "B" on the Risk Based Lending scale when in truth the borrower should have received a score of "D." This fraud enabled the defendants to circumvent the required Credit Committee approval and enabled the loan to be funded.

g.      On or about September 21, 2005, in loan number 3014870-143 the borrower scored "C" when in truth the borrower should have received a score of "E." This fraud enabled the defendants to circumvent the required Credit Committee approval and enabled the loan to be funded.

h.      On or about September 15, 2005 in loan number 3014780-143 the borrower scored "C" when in truth the borrower should have received a score of "E." This fraud enabled the defendants to circumvent the required Credit Committee approval and enabled the loan to be funded.

i.      On or about October 5, 2005, in loan number 3015630-143 the credit score for the borrower totaled 504 so that the borrower achieved a score of "C" when in fact the credit score should have totaled 389 which should score an "E." This fraud enabled the defendants to circumvent the required Credit Committee approval and enabled the loan to be funded.

## COUNT ONE-CONSPIRACY

9.      Introductory Paragraphs 1 through 8 are re-alleged and fully incorporated herein by reference.

10.      From on or about January 1, 2005 through on or about October 2005, in Catawba and Iredell Counties, within the Western District of North Carolina, and elsewhere the defendants,

JENNIFER SIGMON, and
AARON MORRIS

devised and executed a scheme and artifice

(a) to defraud TCCU , the deposits of which were then insured by the National Credit Union Share Insurance Fund; and

(b) to obtain moneys, funds, credits, assets, securities, or other property owned by or under the custody or control of TCCU, the deposits of which were then insured by the National Credit Union Share Insurance Fund, by means of false and fraudulent pretenses and representations.

and did knowingly and willfully conspire, combine, and agree with one another, and with other persons both known and unknown to the grand jury, to execute, and attempt to execute, a scheme and artifice to defraud a financial institution and to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, and promises.

In violation of Title 18, United States Code, Sections 2, 1349 and 1344.

Page 3 of 4

## COUNT TWO- BANK FRAUD

11. Introductory Paragraphs 1 through 8 are re-alleged and fully incorporated herein by reference.

12. From on or about January 1, 2005 through on or about October 2005, in Catawba and Iredell Counties, within the Western District of North Carolina, and elsewhere the defendants,

JENNIFER SIGMON, and
AARON MORRIS

devised and executed a scheme and artifice

(a) to defraud TCCU, the deposits of which were then insured by the National Credit Union Share Insurance Fund; and

(b) to obtain moneys, funds, credits, assets, securities, or other property owned by or under the custody or control of TCCU, the deposits of which were then insured by the National Credit Union Share Insurance Fund, by means of false and fraudulent pretenses and representations.

It was part of the scheme and artifice that the defendants would enter false information onto credit applications and other forms required to process loans and provide bogus documentation that supported these applications, in order to qualify individuals for loans on automobiles who would not qualify had legitimate information and documentation been used and that they did aid and abet one another and others in carrying out this scheme and artifice.

In violation of Title 18, United States Code, Sections 2 and 1344.

A TRUE BILL:

GRAND JURY FOREPERSON

GRETCHEN C. F. SHAPPERT
UNITED STATES ATTORNEY

COREY F. ELLIS
ASSISTANT UNITED STATES ATTORNEY

Page 4 of 4